VAN SWEARINGEN – 259809
HUGO CABRERA – 309289
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:    (415) 433-6830
Facsimile:    (415) 433-7104
Email:        vswearingen@rbgg.com
              hcabrera@rbgg.com

Attorneys for Plaintiff SIERRA CLUB

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| SIERRA CLUB,<br><br>                    Plaintiff,<br><br>         v.<br><br>UNITED STATES SECURITIES AND<br>EXCHANGE COMMISSION,<br><br>                    Defendant. | Case No. 4:19-cv-6971<br><br>**COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF** |

[3432947.6]

Plaintiff Sierra Club, through counsel, alleges as follows:

**INTRODUCTION**

1.     Defendant United States Securities and Exchange Commission ("SEC") violated the Freedom of Information Act ("FOIA" or the "Act"), 5 U.S.C. § 552, by failing to timely produce documents in its possession following a lawful request by Sierra Club.

2.     SEC's oversight of the shareholder proposal process pursuant to the Securities Exchange Act of 1934 is of great public interest and importance.  Many such shareholder proposals, if allowed to be brought to a shareholder vote, could lead to significant changes in how businesses address critical environmental issues, such as clean air, clean water, and climate change.

3.     Pursuant to Rule 14a-8 of the Securities Exchange Act, publicly held companies may exclude shareholder proposals from being voted on at shareholder meetings under only a few specific circumstances and only after submitting its reasons to the SEC.  The SEC, which regulates publicly held companies, may take action against such companies if they improperly block shareholders from exercising their rights to bring issues to a vote.  Since President Donald Trump took office, the SEC has increasingly allowed companies to exclude shareholder proposals aimed at curbing global warming and adopting environmental standards.  In effect, the SEC has quietly allowed companies to kill such proposals before they can even be presented for a shareholder vote.

4.     Sierra Club, the nation's oldest grassroots environmental organization and a strong supporter and proponent of clean energy sources, sought to further its long-standing interest in government accountability and transparency by filing a FOIA request with SEC on April 18, 2019 for documents showing: (1) communications between the SEC and external parties related to climate-focused shareholder proposals; and (2) records in SEC's possession related to SEC's processes for rejecting or approving a company's decision to exclude shareholder proposals related to climate change.

5.     SEC acknowledged receiving Sierra Club's FOIA request on April 19, 2019, which required SEC to make a determination on the request May 17, 2019 and to produce

[3432947.6]

1   documents promptly thereafter.  Instead, SEC delayed and did not even provide an

2   estimate of responsive documents until June 20, 2019—two months after the request was

3   received.  Thereafter, SEC revised its estimate of responsive documents three times—from

4   2,000 emails containing about two pages per email (*i.e.*, 4,000 pages), to 9,852 pages, and

5   then to over 200,000 pages.

6        6.      Amid SEC's rapidly changing estimates, on June 25, 2019, SEC informed

7   Sierra Club its request was being placed in SEC's "complex track" for processing, which

8   meant that Sierra Club would have to wait three years before SEC even starts reviewing

9   the responsive documents to determine if they could be produced, or if the documents were

10  responsive to the request at all.  SEC refused to meaningfully engage with Sierra Club's

11  efforts to narrow the request and propose reasonable production timelines.  SEC has not

12  produced any documents within a reasonable timeframe, and it failed to timely make a

13  determination with respect to Sierra Club's July 16, 2019 appeal despite its obligation to

14  provide a determination within 20 business days after the appeal was received.

15       7.      Timely disclosure of the public records requested is imperative given that the

16  records at issue are of significant public interest and concern.  Based on these records,

17  policymakers and the public will be able to determine if the SEC is improperly impeding

18  company shareholders from exercising their voting rights to demand that companies

19  implement environmentally-conscious policies.

20       8.      SEC has ignored deadlines mandated by FOIA, failed to timely provide a

21  final determination on Sierra Club's April 19, 2019 FOIA request, and failed to produce

22  any records in response to the request or provide any date by which it will do so.  As a

23  result, Sierra Club now seeks judicial intervention to bring SEC into compliance with the

24  law.

25       9.      SEC has demonstrated a pattern and practice of failing to comply with FOIA

26  requests by improperly using "complex track" determinations to shield itself from

27  complying with lawful requests, and thereby to undermine the purpose of the Act.

28

2

1      **JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

2      10.    This Court has jurisdiction over this matter pursuant to 5 U.S.C.

3  § 552(a)(4)(B) and 28 U.S.C. § 1331.

4      11.    Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) because Plaintiff

5  Sierra Club has its principal place of business in Oakland, California.

6      12.    For the same reason, intradistrict assignment is proper in the Oakland

7  Division.  *See* N.D. Cal. L.R. 3-2.

8                                    **PARTIES**

9      13.    Plaintiff Sierra Club was founded in 1892 and is the nation's oldest

10  grassroots environmental organization.  Plaintiff Sierra Club is incorporated in the State of

11  California as a Nonprofit Public Benefit Corporation with its headquarters in Oakland,

12  California.  Sierra Club is a nonprofit, membership organization with more than 3.5

13  million members and supporters nationwide.  Sierra Club is dedicated to protecting and

14  preserving the natural and human environment, and its purpose is to explore, enjoy, and

15  protect the wild places of the earth; to practice and promote the responsible use of the

16  earth's ecosystems and resources; and to educate and enlist humanity to protect and restore

17  the quality of the natural and human environments.  Sierra Club is a leading non-

18  governmental organization seeking to educate and mobilize the public on issues of climate

19  change, fossil fuel energy, and clean energy.  It conducts multiple public campaigns

20  around these issues, including its Beyond Coal Campaign and Dirty Fuels Campaign.  In

21  support of those efforts and to further Sierra Club's long-standing interest in government

22  accountability and transparency, Sierra Club submitted to SEC the FOIA request at issue in

23  this case.

24      14.    Sierra Club routinely uses FOIA to obtain information from federal agencies,

25  which Sierra Club's legal and policy experts analyze in order to inform their members and

26  the public about public health and environmental issues.  Sierra Club regularly conveys

27  important information to its members and the public through publications and press

28  releases, as well as by publicly releasing information and documents obtained through

[3432947.6]

FOIA requests.

15.    Plaintiff brings this action on its own behalf and on behalf of its members. Plaintiff and its members have been and continue to be injured by Defendant's failure to provide requested records within the timeframes mandated by the FOIA.  The requested relief will redress these injuries.

16.    Defendant SEC is an independent agency of the of the United States government within the meaning of 5 U.S.C. § 551(1).  It has in its possession and control the records sought by Sierra Club, and as such, is subject to FOIA pursuant to 5 U.S.C. § 552(f).

## STATUTORY FRAMEWORK

17.    Enacted in 1966, the Freedom of Information Act was designed to protect citizens' "right to be informed about what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (internal quotations omitted).  "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  The statute was intended "to permit access to official information long shielded unnecessarily from public view and … to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 80 (1973).

18.    To this end, FOIA requires agencies of the federal government to release, upon request, information to the public, unless one of nine specific statutory exemptions applies.  5 U.S.C. § 552(b).  These exemptions are narrowly construed, and the agency bears the burden of establishing the applicability of each exemption as to each record for which it is claimed.  *See Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011); *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (noting FOIA's "strong presumption in favor of disclosure" and that an agency bears the burden for demonstrating an exemption properly applies).

[3432947.6]

19.     Upon receiving a FOIA request, an agency has twenty working days to respond by determining whether responsive documents exist and whether the agency will release them.  5 U.S.C. § 552(a)(6)(A); 17 C.F.R. § 200.80(d).  Agencies must make reasonable efforts to search for records in a manner that is reasonably calculated to locate all records that are responsive to the FOIA request.  5 U.S.C. § 552(a)(3)(C)–(D).  An agency may delay an initial determination by ten working days only if the agency can demonstrate that it faces "unusual circumstances."  5 U.S.C. § 552(a)(6)(B); 17 C.F.R. § 200.80(d)(5).  FOIA further requires agencies to make records "promptly available" to requesting parties.  5 U.S.C. § 552(a)(3)(A).

20.     If an agency withholds responsive records, in whole or in part, the burden is on the agency to prove that an exemption applies and that it outweighs FOIA's policy of disclosure.  *See, e.g.*, 5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).  Whenever an agency determines that a portion of a record should be withheld under one of FOIA's exemptions, the agency must still release to the public any portions of that record that contain "reasonably segregable" non-exempt information.  5 U.S.C. § 552(b).

21.     If an agency makes an initial determination that it will deny a FOIA request in whole or in part, the requester is entitled to administratively appeal the determination.  *Id.* § 552(a)(6)(A)(ii).  SEC regulations require administrative appeals to be filed within 90 calendar days. 17 C.F.R. § 200.80(f)(1).  FOIA requires the agency to make a determination with respect to an administrative appeal of a denial of a request within twenty working days.  5 U.S.C. § 552(a)(6)(A)(ii); *see also* 17 C.F.R. § 200.80(d)(8).

22.     If the agency fails to comply with the statutory time limits to respond to a FOIA request or appeal, the requester is deemed to have exhausted its administrative remedies and may commence litigation in district court to compel an adequate response from the agency.  5 U.S.C. § 552(a)(4)(B), (a)(6)(C)(i).  FOIA provides that the district court shall have jurisdiction "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."

[3432947.6]

5 U.S.C. § 552(a)(4)(B).

23.     FOIA and SEC's regulations state that a requester is entitled to a waiver of fees associated with responding to a FOIA request when the information sought "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii); 17 C.F.R. § 200.80(g)(12).  Further, an agency cannot assess fees against a requester if it does not respond to the request within the time established by FOIA.  *See* 5 U.S.C. § 552(a)(4)(A)(viii).

24.     FOIA permits the Court to "assess … reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).

**STATEMENT OF FACTS**

**SEC'S Rejection of Shareholder Proposals**

25.     The SEC issues "no-action" letters at the request of individuals or entities that seek advice whether its activities would constitute a violation of federal securities law. *See* No Action Letters, U.S. Securities and Exchange Commission (Mar. 23, 2017), https://www.sec.gov/fast-answers/answersnoactionhtm.html (last visited Oct. 15, 2019). These letters serve to give the requesting party an assurance that SEC will not bring an enforcement action against it for its conduct.  *Id*.  No-action letters are sought for various reasons, including when a company, pursuant to rule 14a-8 of the Securities and Exchange Act, wants to exclude a shareholder's proposal from the company's proxy materials (which would otherwise lead to the proposal being brought to shareholder vote).  *See* Announcement Regarding Rule 14a-8 No Action Requests,  U.S. Securities and Exchange Commission (Oct. 15, 2019), https://www.sec.gov/corpfin/announcement/announcement-rule-14a-8-no-action-requests (last visited Oct. 15, 2019).  In response to a company request for a shareholder proposal no-action letter, the SEC may concur, disagree, or decline to state a view as to whether there is a basis for exclusion.  *Id*.

26.     On November 1, 2017, the SEC issued new legal guidance that broadened

[3432947.6]

the definition of "micromanagement" which can be a basis for shareholder proposal

exclusion pursuant to rule 14a-8.  *See* Shareholder Proposals:  Staff Legal Bulletin No. 14I,

Division of Corporation Finance Securities and Exchange Commission (Nov. 1, 2017),

https://www.sec.gov/interps/legal/cfslb14i.htm (last visited Oct. 15, 2019).  The SEC's

guidance was then followed with an unprecedented no-action letter regarding EOG

Resources, Inc., which sought to omit from shareholder consideration a resolution

requiring the company to set a target to reduce its greenhouse gas emissions.  *See* Amy

Harder, *Investors stunned over oil producer's climate-change exemption*, AXIOS, April 2,

2018, *available at* https://www.axios.com/oil-producers-climate-change-exemption-

e3887656-42c0-4510-ad0d-6118cc3aef94.html.  Specifically, the February 26, 2018 SEC

no-action letter siding with EOG Resources rejected the shareholder proposals for the gas

company to "adopt company-wide, quantitative, time-bound targets for reducing

greenhouse gas emissions."  *See* Letter from William Mastrianna, Attorney-Advisor,

Response of the Office of Chief Counsel, Division of Corporation Finance (Feb. 26, 2018),

*available at* https://www.sec.gov/divisions/corpfin/cf-noaction/14a-

8/2018/trilliummiller022618-14a8.pdf (last visited Oct. 15, 2019).  In their no-action letter,

the SEC stated that the proposal "seeks to micromanage the Company by probing too

deeply into matters of a complex nature which shareholders, as a group, would not be a in

a position to make an informed judgment."  *Id.*

      27.     Until the EOG Resources decision, the SEC had never issued a shareholder

proposal no-action letter on the issue of greenhouse gas targets.  *See* Harder, *supra,*

AXIOS.  Recently, however, SEC has increasingly cited "micromanagement" to support

its recent shareholder proposal no-action letters.  *See* Marc S. Gerber, Hagen J. Ganem,

and Ryan J. Adams, *The Impact of SEC Staff Guidance on Shareholder Proposals Leaves

a Murky Path Forward*, Skadden, Arps, Meagher & Flom LLP, June 18, 2019, *available at*

https://www.skadden.com/insights/publications/2019/06/quarterly-insights/the-impact-of-

sec-staff-guidance (stating that in 2019 the SEC "granted no-action relief on the basis of

micromanagement in 21 instances, up from 11 in the 2018 proxy season, four during the

2017 season and one during the 2016 or 2015 seasons.") (last visited Oct. 15, 2019). The Sustainable Investments Institute, a nonprofit, nonpartisan research organization, also voiced concern over the change in its 2018 Proxy Season Review, and in a letter to the SEC stated that its new interpretation of rule 14a-8 resulted in a "reduction in the number of proposals going to votes on [climate] issues …." *See* Letter from Heidi Welsh, Executive Director, Sustainable Investments Institute, to Brett J. Fields, Secretary of the U.S. Securities and Exchange Commission (Nov. 12, 2018), *available at* https://www.sec.gov/comments/4-725/4725-4636528-176443.pdf (last visited Oct. 15, 2019).  Shareholder support for climate-related proposals is at an "all-time high," but the number of resolutions coming to a vote has declined significantly, in part because SEC's "no-action" letters.  *See* Jon Hale & Jackie Cook,  *Proxy Process Opens Door to Constructive Engagement on Climate*:  *The number of resolutions and the increasing levels of support reflect shareholders' growing concerns about the climate-resilience of their portfolios*, Morningstar, Sept. 5, 2019, *available at* https://www.morningstar.com/articles/945007/proxy-process-opens-door-to-constructive-engagement-on-climate (last visited Oct. 15, 2019).

**Sierra Club's Request for SEC Documents Pursuant to FOIA**

28.     Because of growing public concern that the SEC is working to block environmental-minded shareholder proposals from shareholder vote and approval, the Sierra Club—a strong supporter of corporate environmental initiatives—submitted a FOIA request to the SEC through its online submission portal on April 18, 2019, which is attached hereto as **Exhibit A** (the "FOIA Request").

29.     Sierra Club's FOIA Request asked SEC to disclose records in its possession since December 1, 2016, including:

> All records of communication with any party external to SEC, mentioning, describing, containing, or relating in any way to the topics listed below.  We are seeking all such records sent to, sent from, produced by, or in the possession of any present or former agency officials or staff, including but not limited to Chairman Jay Clayton; Chief of Staff to the Chairman, Lucas Moskowitz; Commissioner Elad L. Roisman; Commissioner Hester M. Pierce; Director, Division of Corporation Finance, William Hinman; Chief

[3432947.6]

Counsel and Associate Director, Division of Corporation Finance, David Fredrickson; Special Counsel, Division of Corporation Finance, M. Hughes Bates; and Attorney-Adviser, Division of Corporation Finance, Kasey L. Robinson.  The topics subject to this request include the following:

A.    Shareholder proposals on climate change, greenhouse gases, or the Paris Climate Agreement

B.    Rule 14a-8 in general

C.    Rule 14a-8(i)(7)

D.    "Micromanagement" as that term is used at the SEC

E.    Staff legal bulletins 14I and 14J

All non-exempt internal records including but not limited to memos, materials, decision memos for no-action letters, correspondence, phone logs, and visitor meeting sign-in sheets, mentioning, describing, containing, or relating in any way to the topics listed below.  We are seeking all such records sent to, sent from, produced by, or in the possession of any present or former agency officials or staff, including but not limited to Chairman Jay Clayton; Chief of Staff to the Chairman, Lucas Moskowitz; Commissioner Elad L. Roisman; Commissioner Hester M. Pierce; Director, Division of Corporation Finance, William Hinman; Chief Counsel and Associate Director, Division of Corporation Finance, David Fredrickson; Special Counsel, Division of Corporation Finance, M. Hughes Bates; and Attorney-Adviser, Division of Corporation Finance, Kasey L. Robinson.  The topics subject to this request include the following:

A.    Shareholder proposals on climate change, greenhouse gases, or the Paris Climate Agreement

B.    Rule 14a-8 in general

C.    Rule 14a-8(i)(7)

D.    "Micromanagement" as that term is used at the SEC

E.    Staff legal bulletins 14I and 14J

*See* Exhibit A.

30.    Sierra Club submitted its request as part of its ongoing national effort to address the pressing problems of climate change, air pollution, and our national dependence on dirty and expensive energy sources such as oil and coal and to promote the use of clean energy sources.

31.    On April 19, 2019, SEC replied to Sierra Club's FOIA Request with a letter of acknowledgement, a copy of which is attached hereto as **Exhibit B**.  This

[3432947.6]

acknowledgement letter states that that Sierra Club's FOIA Request was received on April 19, 2019 and that it was assigned tracking number 19-01844-FOIA.

32.     FOIA requires SEC to make a final determination upon Sierra Club's FOIA Request within twenty working days of the request, which was May 17, 2019, and to produce documents responsive to the request promptly thereafter.  *See* 5 U.S.C. § 552(a)(6)(A)(i).  SEC neither made a final determination nor produced documents by May 17, 2019.

33.     On April 23, 2019, SEC replied to Sierra Club's request for a fee waiver in connection with processing the FOIA Request.  A copy of SEC's April 23, 2019 letter is attached hereto as **Exhibit C**.  That letter granted Sierra Club's request for a fee waiver based on the fact that "(A) disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operation and activities of the government and (B) disclosure is not primarily in the commercial interest of the requestor, 5 U.S.C. § 552(a)(4)(iii)."

34.     On Friday, May 17, 2019 (the last day of the initial 20-day deadline) SEC FOIA Branch Manager Lizette Katilius requested a phone call with the Sierra Club to "discuss your request."  SEC's May 17, 2019 email is attached hereto as **Exhibit D**.  The phone call was scheduled for Monday, May 20, 2019, and following the call, Ms. Katilius sent an email to Sierra Club confirming the conversation.  The May 20, 2019 SEC email, which is attached hereto as **Exhibit E**, shows that Sierra Club agreed to narrow its request and that SEC would not separately search for the term "micromanagement," one of the five terms Sierra Club originally sought in its FOIA request.

35.     On May 20, 2019, Sierra Club responded by email to SEC, confirming that SEC's understanding of Sierra Club's narrowing of search terms was accurate.  Sierra Club stated that it would further narrow its search by including only SEC's Division of Corporation Finance as opposed to the broader original request for documents from "any present or former agency officials or staff."  Sierra Club's email additionally asked whether SEC could produce the documents by June 20, 2019.  Sierra Club's email of

[3432947.6]

1  May 20, 2019 is attached hereto as **Exhibit F**.

2       36.     On June 7, 2019, Sierra Club followed up by email asking if SEC would be

3  able to produce the documents by June 20, 2019.  Sierra Club's June 7, 2019 email is

4  attached hereto as **Exhibit G**.

5       37.     On June 10, 2019, SEC responded that it would not know when the

6  documents could be produced until it received the search results and stated that SEC would

7  "get back to you once we hear back from the program offices."  SEC's June 10, 2019

8  email is attached hereto as **Exhibit H**.

9       38.     On June 11, 2019, Sierra Club emailed SEC to ask when SEC expected to

10  hear back from the program offices and stated that "it would be helpful to have some sort

11  of timeline" for the document production, as SEC had provided none.  Sierra Club's

12  June 11, 2019 email is attached hereto as **Exhibit I**.

13       39.     Two months after acknowledging Sierra Club's FOIA request, on June 19,

14  2019, SEC responded that this "morning we received the initial search results and we will

15  start the review process" and that they would let Sierra Club "know when all the results are

16  in so [SEC] can provide [Sierra Club] an anticipated completion time frame."  SEC's

17  June 19, 2019 email is attached hereto as **Exhibit J**.

18       40.     The next day, on June 20, 2019, SEC emailed Sierra Club again stating that

19  "based on the volume of emails (over 2,000) the modified request qualifies for processing

20  in the complex track."  In that June 20, 2019 email, which is attached hereto as **Exhibit K**,

21  SEC also requested a phone call to discuss next steps.

22       41.     After a phone call on June 25, 2019, SEC sent an email to Sierra Club stating

23  that the search terms had actually generated 4,926 potentially responsive emails, and that

24  based on that number, the request qualified for placement in SEC's complex track.  SEC's

25  June 25, 2019 summary email is attached hereto as **Exhibit L**.  Later that day, SEC

26  emailed Sierra Club again notifying Sierra Club of its right to appeal.  SEC's second

27  June 25, 2019 email is attached hereto as **Exhibit M**.

28       42.     On June 28, 2019, Sierra Club responded to SEC summarizing two phone

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

[3432947.6]

calls with the SEC on June 25, 2019.  That June 28, 2019 Sierra Club email, which is attached hereto as **Exhibit N**, states that Sierra Club was told that, because the request would require more than 32 hours of processing time, it qualified for "complex track" processing, which would require a three-year waiting period before SEC would even start its review.  The email also confirmed that SEC informed Sierra Club that there were 4,926 responsive emails (or around 9,852 responsive pages) as well as that SEC stated that it does not have software with threading or deduping capabilities.  Sierra Club requested that SEC produce 1,000 emails per month.  Sierra Club also requested to know how the complex track determination had been reached and how a three-year waiting period was determined.  Sierra Club stated that a three-year waiting period is not compliant with the "promptly available" standard and is an outlier among federal agency production timelines.

43.    On July 1, 2019, SEC informed Sierra Club by email that the estimate of 4,926 responsive emails had now been revised to over 200,000 pages of potentially responsive email communications "based on updated information about the file size of the potentially responsive emails."  Despite previously informing Sierra Club that it did not have de-duping capabilities, SEC stated that "de-duping the emails would not remove the request from the complex track" processing.  The July 1, 2019 email closed with: "As for the remainder of your email, we are not required to respond to questions."  The July 1, 2019 email also attached a "Complex Track" determination letter.  That letter stated that SEC will be unable to respond to your request within the Freedom of Information Act's twenty day statutory time period [… t]herefore, we are invoking the 10 day extension."  SEC stated that "we anticipate that it may take thirty-six months or more before we can begin to process a request placed in our Complex track," and inquired whether Sierra Club would like its request to be placed in the Complex track.  SEC's July 1, 2019 email and its complex track determination letter are attached hereto as **Exhibit O**.

44.    On July 3, 2019, Sierra Club responded to SEC stating that it was surprised that SEC was now estimating over 200,000 pages—an extreme change in the estimated pages—and asked for an explanation regarding the search discrepancy.  In an effort to

[3432947.6]

more promptly obtain documents, Sierra Club informed SEC that it would significantly

narrow its request from the universe of employees within SEC's Division of Corporation

Finance to only five individuals.  Sierra Club also narrowed the date range for two of the

five custodians.  Sierra Club further confirmed that the search criteria be limited to the

narrowed terms agreed on May 20, 2019.  Sierra Club's July 3, 2019 email is attached

hereto as **Exhibit P**.

45.     On July 8, 2019, SEC responded that even with the modified request for just

"five individuals" the volume is still over 200,000 pages of emails, and that the large

volume could be due to "the date range (three years), possible duplicates, attachments,

and/or false positives."  SEC's email provided no clear explanation for the sudden change

resulting in a more than twenty-fold difference in the number of potentially responsive

documents.  Nor did the email explain how SEC's estimate of over 200,000 remained the

same, despite Sierra Club's narrowing the set of custodians from the entire Division of

Corporation Finance to only five individuals.  SEC's July 8, 2019 email is attached hereto

as **Exhibit Q**.

46.     On July 12, 2019 Sierra Club sent a letter to SEC, identifying SEC's failure

to comply with statutory timelines, explaining how it substantially narrowed its request,

and reiterating its surprise that the further narrowed request still resulted in the same

number of potentially responsive documents.  Sierra Club rejected SEC's demand that it

accede to a placement on the complex track that would require Sierra Club to wait three

years before the beginning of a document production.  Sierra Club's July 12, 2019 letter is

attached hereto as **Exhibit R**.

47.     On July 15, 2019, SEC responded that it had suggested that SEC could

process part of the request up to 32 hours and the unreviewed portion would be processed

in SEC's complex track, but that Sierra Club rejected that offer.  SEC further indicated that

the letter from Sierra Club would be forwarded to the Office of General Counsel as an

appeal of the SEC's determination that the request be processed in the complex track.

SEC's email of July 15, 2019 is attached hereto as **Exhibit S**.

[3432947.6]

48.     On July 15, SEC sent a letter to Sierra Club stating that it considered Sierra Club's July 12, 2019 letter to be an appeal.  SEC's July 15, 2019 letter is attached hereto as **Exhibit T**, and states that the appeal was assigned tracking number 19-00465-APPS.

49.     On July 16, 2019, Sierra Club sent SEC a formal appeal of SEC's proposal that Sierra Club wait three years for it to begin reviewing potentially responsive documents, stating that a three-year delay is inconsistent with the "prompt" production of records requirements, as required by the law.  The July 16, 2019 appeal, which together with the July 16, 2019 email are attached hereto as **Exhibit U**, state that the July 12, 2019 letter from Sierra Club was not a formal appeal.

50.     By letter dated September 24, 2019, SEC denied Sierra Club's appeal. The letter states that the "FOIA Office estimated that it would take thirty-six months or more before it can begin to process a request placed in the Complex track."  The letter states that "a request may be placed in the FIFO [first in first out] system for review and processing where, due to the quantity of records, time and/or work involved, the review of the records cannot be completed within 20 business days."  The response states that, pursuant to 17 C.F.R. § 200.80(d)(5)(ii), the "FOIA Office properly determined that the processing of [Sierra Club's] FOIA request under the FIFO track was appropriate."  The response further states that the terms requested in connection with the FOIA request "are not sufficiently tailored to limit the search to the specific categories of documents . . .".  SEC's September 24, 2019 appeal response is attached hereto as **Exhibit V**.

51.     SEC's failure to produce documents to the Sierra Club in response to its FOIA Request is unlawful under FOIA, its revisions of its page estimate were arbitrary and insufficiently explained, and its stated three-year delay and refusal to answer Sierra Club's questions demonstrate bad faith in its handling of the FOIA Request.  SEC's demand that Sierra Club wait three years before it even begins its review is part of a pattern and practice of unreasonable delay.  Despite a drop in the number of SEC FOIA requests filed since 2016 (14,458 in 2016, 13,063 in 2017, and 14,229 in 2018), the average number of days that it has taken SEC to process complex FOIA requests has grown enormously over

[3432947.6]

the past three years (347 days in 2016, 733 days in 2017, and 726 days in 2018).  *See* Annual FOIA Report: Summary of Certain Data and Comparison with Prior Years, U.S. Securities and Exchange Commission (FY14-18), https://www.sec.gov/foia/arfoia18-comparison-chart.pdf (last visited Oct.8, 2019).  Meanwhile, SEC's average processing time for "simple requests" has remained within a narrow five-day band (16.47 days in 2016, 12.5 days in 2017, and 11.79 days in 2018).  *Id*.  Upon information and belief, SEC's pattern and practice is to use its two-track system for simple and complex requests as an excuse to avoid the timely processing of FOIA requests.  Any FOIA request that SEC deems will require longer than 32 hours to process is placed in the complex track which necessarily results in a three-year or more waiting period.  Upon information and belief, SEC's pattern and practice of using its complex track to delay responding to FOIA requests is harming others who have filed lawful FOIA requests with the SEC.

52.     Prompt access to the requested information is crucial to Sierra Club because it directly relates to how the SEC is handling shareholder proposals and whether SEC is biased against environmental-minded shareholder proposals.  The anticipated production of documents is relevant to Sierra Club's ability to engage effectively in, and provide public oversight of, the government's support for polluting industries.  On information and belief, the requested documents will demonstrate that SEC—an independent government agency—has changed its position with respect to how it handle environmentalist-backed shareholder proposals under the Trump Administration.  Requiring a three-year or more waiting period ensures that the information Sierra Club seeks from SEC will be stale upon receipt.

**FIRST CLAIM FOR RELIEF**
**(Violation of FOIA, 5 U.S.C. §§ 552(a)(6)(A-B), 552(a)(3)(A):**
**Failure to Comply with FOIA's Mandatory Deadlines)**

53.     Plaintiff re-alleges and incorporates by reference all the foregoing paragraphs in this Complaint as though fully set forth herein.

54.     Upon its FOIA Request to the SEC, Sierra Club became statutorily entitled under FOIA to promptly receive from SEC all records responsive to its request. 5 U.S.C

[3432947.6]

1    § 552(a)(6)(A)(i).

2        55.    SEC failed to meet its twenty working-day deadline to determine whether

3    responsive documents exist and whether it will release them.  5 U.S.C. § 552(a)(6)(A).

4    SEC failed to show "unusual circumstances" that would warrant a further ten working-day

5    delay in making its determination.  5 U.S.C. § 552(a)(6)(B).  By failing to timely make a

6    final determination or produce records in response to Sierra Club's April 18, 2018 FOIA

7    Request, SEC has violated FOIA's mandate to provide a complete response and

8    "promptly" release agency records within the timeframe required by the statute.  *See* 5

9    U.S.C. § 552(a)(3)(A) and (a)(6)(A)(i).

10        56.    SEC's determination that Sierra Club must wait at least three years before it

11    begins its review of potentially responsive documents is unreasonable and a violation of

12    FOIA's mandate to provide a complete response and "promptly" release agency records

13    within the timeframe required by the statute.  *See* 5 U.S.C. § 552(a)(3)(A) and (a)(6)(A)(i).

14        57.    Sierra Club has exhausted the applicable administrative remedies.

15        58.    Sierra Club is entitled to obtain the requested records immediately at no cost.

16        59.    SEC's unreasonable delay is irreparably harming the Sierra Club, and will

17    continue to irreparably harm the Sierra Club unless SEC is compelled to comply fully with

18    FOIA.

19                        **SECOND CLAIM FOR RELIEF**
                        **(Violation of FOIA, 5 U.S.C. § 552(a)(3):**
20                **Failure to Conduct Adequate Search for Responsive Documents)**

21        60.    Plaintiff re-alleges and incorporates by reference all the foregoing paragraphs

22    in this Complaint as though fully set forth herein.

23        61.    Sierra Club has a statutory right to have the SEC process requests in a

24    manner that complies with FOIA. 5 U.S.C. § 552(a)(3).

25        62.    The SEC violated the Sierra Club's right in this regard when it arbitrarily

26    provided revised search result figures and failed to provide an accurate count of responsive

27    documents found in its search, and it failed to examine whether the search results

28    presented to Sierra Club represented an accurate count or consisted of duplicate documents

[3432947.6]

1   or false positives.  SEC failed to explain how the number of potentially responsive

2   documents grew from "over 2,000 emails" to "4,926 potentially responsive emails"

3   (around 9,852 pages) to "over 200,000 pages" without any change to the search terms or

4   custodian.  SEC failed to explain how the number of potentially responsive documents

5   remained at "over 200,000 pages" after Sierra Club confirmed it had reduced the number

6   of custodians from the Division of Corporation Finance to only five individuals, and had

7   narrowed the time frame for two of those five individuals.

8       63.     Upon information and belief, SEC failed to undertake a search that is

9   reasonably calculated to locate all records responsive to the Sierra Club's request.

10                     **THIRD CLAIM FOR RELIEF**
                 **(Violation of FOIA, 5 U.S.C. § 552(a)(6)(A)(ii):**
11   **Failure to Comply with FOIA's Mandatory Appeal Determination Deadline)**

12      64.     Plaintiff re-alleges and incorporates by reference all the foregoing paragraphs

13   in this Complaint as though fully set forth herein.

14      65.     Upon its formal appeal filed on July 16, 2019, Sierra Club became statutorily

15   entitled under FOIA to receive from SEC an appeal determination within twenty days of

16   receipt of Sierra Club's FOIA Request (excepting Saturdays, Sundays, and legal public

17   holidays).  5 U.S.C. § 552(a)(6)(A)(ii).  Accordingly, FOIA required SEC to provide Sierra

18   Club with an appeal determination upon Sierra Club's appeal by August 13, 2019, if the

19   appeal was received on July 16, 2019.

20      66.     SEC's letter responding to Sierra Club's appeal was dated September 24,

21   2019—a total of 49 working days after Sierra Club filed its appeal.

22      67.     SEC's unreasonable delay irreparably harmed the Sierra Club, and its final

23   determination to not produce records in accordance with FOIA will continue to irreparably

24   harm the Sierra Club unless SEC is compelled to comply fully with FOIA.

25                    **FOURTH CLAIM FOR RELIEF**
              **(Violation of FOIA, 5 U.S.C. §§ 552(a)(6)(A), 552(a)(3)(A):**
26              **SEC's Pattern and Practice is to Violate FOIA)**

27      68.     Plaintiff re-alleges and incorporates by reference all the foregoing paragraphs

28   in this Complaint as though fully set forth herein.

[3432947.6]

69.     Upon information and belief, SEC has a policy and practice of violating FOIA's procedural requirements in connection with the processing of FOIA requests. Specifically, it is SEC's policy and practice to maintain a complex track processing system with a three-year or more backlog to circumvent timely processing of FOIA requests and to shield itself from timely responding to lawful FOIA requests.

70.     Plaintiff is being irreparably harmed by SEC's unlawful policy and practice and will continue to be irreparably harmed unless SEC is compelled to comply with FOIA's procedural requirements to make records "promptly available." *See* 5 U.S.C. § 552(a)(3)(A) and (a)(6)(i).

## PRAYER FOR RELIEF

WHEREFORE, Sierra Club respectfully requests that this Court enter judgment against SEC as follows:

1.     Declare that SEC has violated FOIA by failing to make a timely final determination upon Sierra Club's FOIA Request and by failing to produce records responsive to Sierra Club's FOIA Request by the statutory deadlines;

2.     Declare that SEC has violated FOIA by failing to make a timely final determination upon Sierra Club's appeal and by failing to produce records responsive to Sierra Club's FOIA Request by the statutory deadlines;

3.     Declare that SEC's pattern and practice is to fail to adhere to FOIA's requirements;

4.     Order that SEC conduct an adequate search for any and all records responsive to Sierra Club's request and demonstrate that it diligently searched for and identified responsive documents;

/ / /

/ / /

/ / /

/ / /

/ / /

[3432947.6]

5.      Order that SEC immediately produce the requested records to Sierra Club;

6.      Award Sierra Club its litigation costs and reasonable attorneys' fees in this action; and

7.      Grant such other and further relief as the Court deems just and proper.

DATED:  October 24, 2019                    Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP

By: _/s/ Van Swearingen_
    Van Swearingen

Attorneys for Plaintiff SIERRA CLUB

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

[3432947.6]